Good afternoon. My name is Pete Wood. I'm the attorney for Karlos Poole. Thank you for granting an oral argument in this case. And I'm going to speak for 15 minutes. I'm going to reserve five minutes for a rebuttal. I'm not simply going to rehash my brief here. To me, this case boils down to two things. Number one, we don't know the reason why Judge Boyle recused himself from the case. And number two, it doesn't matter. Let me give you some background. In 2017, my client, Karlos Poole, pled guilty to three charges. He appealed those charges, and then there were various findings and rulings in both the Fourth Circuit Court of Appeals and at the trial level, ultimately culminating in a remand hearing in September 2019, presided over by Judge Boyle. Can I ask you about that, though, on the appeal, because you didn't address the waiver argument that the government put forward in their brief. Is there a reason why in the first appeal you all didn't attack count two then? Because you knew the issue was the weight of the drugs, right? That's why the government came forward, said, hey, we made a mistake, asked for the sentence to be vacated. Why didn't you ask then, if the weight was such a big deal on count two, why didn't you ask count two to be addressed in that appeal? Haven't you waived it? Well, I don't know why it wasn't addressed at that point. I am, I think, the sixth attorney on this case, maybe the seventh. There were five trial attorneys. I was not the attorney on the first appeal. Let me tell you something, that doesn't help us a bit, Mr. Wood, you're the only attorney we have here, and you're responsible for this case. Yes. So that's no excuse for anything. You're the lawyer for Mr. Poole, and you're what we got, and you're the good one. And you're expected to be able to argue whatever you need to argue based on the record in this case, in the legal principle, go right ahead. Oh, sure. I agree with that wholeheartedly. This all falls on my shoulders. My only point being, I don't know why they did or didn't do something. But my response to that would be that the plea in 2017 was made under the assumption that there was an impartial tribunal, that he was pleading before Judge Boyle, who was impartial. And nothing became apparent until 2019, after it made its way through the Fourth Circuit Court of Appeals, and back to the trial level, and back again, and back again, that Judge Boyle maybe had an issue with partiality at that time. So the issue of the judge not being impartial did not become aware to Mr. Poole until 2019. That's why it wasn't argued with the first appeal. That's my response. It seems to me, though, you've raised two arguments. One is the recusal issue, which is what you're focused on. But two is the infirmity in count two because of the drug weight. Let's put aside the recusal issue, which you'll get a chance to argue there. But put that aside. Don't you think you waived your argument about the recusal issue? You're challenged, though, to count two because the same issue about the weight of the drugs was known on the appeal, the first appeal. And you could have moved to vacate the count two at that time. And you all didn't challenge that. You just challenged count one at that time. Right. And so what I'm asking you is, on that issue, not the recusal issue, is there a waiver? Because the government's raised this in their brief about waiver. And it seems to me that you waived that argument. Am I wrong about that? I would say that the argument about the voluntariness with regard to the drug amount is not nearly as strong as a recusal argument. Are you surrendering that and just going all on recusal now? Is that what you're doing? I'm not going to surrender it. I'm just going to say that I think that the recusal argument is far stronger and there's no issue in my regard with waiver with the recusal argument. I appreciate it. What's the argument for the recusal? You didn't know none was made in the district court. Yes, that's right. What I would say is. Well, that's entirely plain error. I mean, you haven't preserved it. Yes, sir. You're right. It is plain error. I agree with you. So the district court wasn't asked to do anything about any recusal or anything. No. Judge Boyle acted on his own and the record's the record. Nobody complained about it. I think you're right. What's the error and how's it plain and how's he prejudiced and why should we recognize it? Okay. Those are all fair questions. I appreciate you asking. So for it to be plain error, it has to be an error. It has to be plain. It has to affect the confidential right. Start out with that. What's the error? The error is that Judge Boyle presided over the arraignment hearing and there's an appearance of impropriety at that hearing because Judge Boyle recused himself in September 2019. And because he could. So you're saying there was an error in 2017? I don't know when the error was because the record is not as detailed as I would like it to be. My point being that not until 2019 did any issues with Judge Boyle with regards to the six hearings he did before the September 2019 hearing come to light. Nobody knew until September 2019 that there was any question about his impartiality. And the trouble that I have, and I think everybody has, go ahead. Nobody has any indication in the district court about impartiality. There's nothing in the record about impartiality of any kind. Well, I don't know because Judge Boyle recused himself for some reason. And the trouble is that the- He recused himself and Judge Never took it over. But nobody ever asked Judge Boyle why he recused himself. No one objected. That's true. Nor did he vote. And if for some reason, if he was impartial, he got out of the case. Yes, he did. But all the six previous hearings he presided over are all tainted. So 28 U.S.C. 455 says that a judge should recuse himself. Why are they tainted? I mean, we have no, we have very little evidence about why Judge Boyle recused because no one bothered to make a record. But what we do know is he gets, he takes the bench and reads a letter that's dated April 2019. He doesn't read it out loud. He reads it to himself, asks a few questions about it and then says, well, now I have to recuse myself. You know, you'll get another judge. And he leaves the bench. So that's the only evidence we have, which suggests something happened in that letter in April 2019 that he felt he had to recuse himself. What's your best argument for or how that's evidence of a plain error and not recusing in 2017? Well, we don't know why he recused himself. What we do know is that some prior hearing, one of the six prior hearings, something happened that alarmed somebody. We don't know what happened. We don't know who it alarmed. We don't know who these people are. Judge Boyle put nothing in the record. The letter has disappeared. I think we do, right? I mean, what we have says it's a friend, a family friend or something like that was in the record. Right, but we don't know who that person is and we don't know what concerned them. What I'm saying is that one of the six hearings he presided over, there's some issue. We don't even know what the hearing was. So my read of the case law is that a judge should recuse himself if there is a question of impartiality. We don't have to have that proven. There just has to be a question, some sort of reasonable suspicion of impartiality. It's not the same level of proving it. And that's what's codified in statute 28 U.S.C. 455. It says the judge should recuse himself if there's a question, not proof, but a question of his impartiality, reasonable question. And if you've got a case, you said reasonable suspicion. Have you got some kind of authority that the reasonable suspicion is the standard? Yeah, that was my mistake. I think it's as soon as I said that term, I realized that was a term of art that applies in a totally different context. And that's not how I meant to use it. I apologize. I'm not suggesting this is a reasonable suspicion. OK, go ahead. Yeah, right. I'm not I'm not suggesting this is the same thing as a search and seizure. You know, it's not not the same standard. But so there's a number of cases that deal with this. I found the one that was the most helpful to me was federal savings and loan from 1990, from 1988, where two businesses sued each other in the state of South Carolina. One asked that the judge recuse himself. He entered some orders in the case. He refused to recuse himself. Those orders were appealed. And the party, the side seeking recusal, also asked that the for for mandamus of forcing to recuse himself. And the and the Fourth Circuit was was very interested in the case. And they and they held that it didn't matter if the judge actually was partial towards one side. What they said was it was the appearance that mattered. And they said that the public at large and the party seeking recusal could reasonably question the decisions made by the judge. And it was that appearance. It was that it was that painting of the integrity of the court system that concerned the Fourth Circuit. And because of that appearance, they ordered the case, the orders be struck, that the judge had entered and they ordered a new judge be appointed. And this and this judge had connections to the side that was not opposing recusal. The judge was good friends with one of the lawyers. He had hired another one of the lawyers to be his personal attorney. And his son was business partners with the business with the son of another one of the lawyers. And so there was ample reasons there. But but the Fourth Circuit also made it clear, we're not saying that he's not impartial, but this just doesn't look right. And that's what I'm saying has happened in this case. It's one of those ounce of prevention, ton of cure things where if they just rearranged Mr. Poole in front of Judge Devere, I would not have an argument about that today. But the record is not ideal in this case. It's frustrating. I think opposing counsel and I both tried to track down his letter. We've been unsuccessful in doing it. And I don't know what happened to him. Does no one ask Judge Devere to take any steps at all? No, they didn't. I agree with you. They did not. Yes, I agree. You come up here complaining that you didn't do anything below and you say, well, I'm just not in it. So I'm not I'm not accountable for what these other six lawyers have done. So you are accountable for whatever the record is. Yes, yes, I am. And and I accept full responsibility for what happened below. My only point was, I don't know what's going on in the minds of the people. That's all I'm saying. I'm not saying it's not my problem. It is my problem. OK, so I'm not I'm not trying to tell the court you should go after them. I'm here arguing before you. It is an issue I have to deal with. It's my brief. I'm making this argument. So I accept full responsibility for what happened below. So the other situation where the Fourth Circuit has held that the appearance sort of trumps what actually happened would be the case where the Fourth Circuit decides the case to rematch back to the trial division. And that's the case of U.S. versus Guglielmi, which in in that case, they adopted a standard from the Second Circuit for remanding of cases. And basically, they don't they they want there to be an appearance of justice when they when they remand a case. So whether or not the judge actually is biased, if the previous the first judge was a issue with how he might act, they want the public to have the confidence in the system. So they will order a new judge to follow the case. And they they do in that case or the case that cites that U.S. v. Robin talk about the suspicion of partiality. That might be enough. And that's U.S. versus Robin, the second district case, which was adopted by the Fourth Circuit. But it certainly would help if there was a full record in this case. And I agree it is full. It is a plain error. And the case of U.S. v. Davis talks about the need to have facts on the record. And in that case, the judge recused herself partway through a proceeding. And the Fourth Circuit held there was no error in that she had presided over a And the reason there was no error and she recused herself before the sentencing, even though she had represented the defendant 20 years before as a public defender. And the reason there was no error in that case was because she laid out exhaustively the reasons why she had recused herself for sentencing and not for the trial. And the Fourth Circuit then looked at the facts and they looked at the evidence and they did a thorough analysis as well. So there was evidence to back up and sort of override this question that might be raised in that case, too, about the question of a lack of impartiality. And we don't have that in this case. In any case, I've gone over. So I will reserve my remaining time for rebuttal unless there's more questions. Thank you very much. Thank you, Mr. Wood. Mr. Bragdon? My name is David Bragdon, and I represent the United States. I think with regard to the the recusal, plain error really is the most important thing here, and I think what it does is it shifts the burden on the defendant to show some question of bias. And it does that because the party who doesn't raise an issue below deprives the court of information. If the issue were raised below, it could have been addressed by the court. There could have been fact finding on this issue. And we might all have a lot. Mr. Bragdon? Yes. Speaking of raising an issue below, not on recusal, but on the motion to withdraw the guilty plea, did the government raise the mandate rule in front of the district court on remand? We did not raise the mandate rule on remand. So the district court went through the full analysis of whether withdrawal was appropriate, whether there was any reason to question the previous plea. I didn't see the district court ever dealing with the question of, am I even allowed to do this because it wasn't raised on the initial appeal? That is absolutely correct, Your Honor. I would say two things in response to that. First, I think that the way I read the, I guess the case, let me get the name right, the case of Omni Outdoor and the similar cases that limit your ability to bring issues a second time on appeal. I don't see that anything indicating that that's dependent on whether the party raised that below in district court. Yeah, that's my, I've wondered about that. Can you waive the mandate rule? Is there, or are there institutional reasons that you can't waive that waiver? I don't, I don't think you can, I don't think you can waive it because it's, it's really, it's maybe we could have, maybe we could have waived the mandate rule with respect to the district court. So let's suppose the district court had, had decided in favor of the defendant and had said in that instance, well, you know, we think that he can withdraw the plea and we had gone through everything else and then had appealed it and we were arguing the mandate rule at that point. I think that the defendant would have had a much stronger argument that we waived the mandate rule. In this case, we're not talking about the mandate rule. We're talking about the separate rule of waiver, which applies to this court's ability or the propriety of considering an issue that was already before it. And so I think in that instance, you know, that, that can't be waived except before this court. I mean, I think we could have waived that by not raising it on our brief, but I don't think we waived our ability by, by not raising that. Issue below. So that's, that's the distinction I would make. I'm going to, unless there's more questions about that issue, I am going to shift back to the bias issue. And one of the things that I wanted to mention, just because a district court recuses itself for a particular proceeding doesn't mean that there's anything called into question about its bias or credibility with regard to other proceedings. And there's, it's, there's many instances where a court will recuse itself going forward. And in fact, the language on disqualification that the Fourth Circuit has said is a judge has a duty to disqualify himself in any proceeding in which his impartiality might reasonably be questioned. And so it focuses on the proceeding. And why that matters here is the defendant, under the plain error standard, has made no showing of any, has made no showing at all of any bias at this September proceeding. And so the fact that there's a letter, I believe, about a year and a half later, doesn't, doesn't give, and that the judge recuses on the basis of that letter, that gives no indication that there's any sort of conflict or issue, you know, many months before that. And, and secondly, Let me ask you this, would it have helped if the government had made some kind of a record? I agree. Well, I mean, we've been talking about the defendant, he's claiming plain error, he didn't do anything. Well, neither did the government do anything. I mean, both sides had, if there's going to be an appeal or a review, some responsibility to help us out a little bit. I agree that it would be much better to have the information. There's no doubt about that. But the question is, what is the standard of review? And when a party doesn't raise something below, when they've lost, the court puts the obligation on the losing party to, this higher standard of evidence. And, and I think they do that because it's, it's the losing party that has the most incentive to get this right. And the party that won isn't as worried about the record, may not be thinking about this issue at all. This was a, a family friend of the defendant or something, you know, somebody connected with the defendant. For all we know, counsel may have known exactly what was in that letter and intentionally chose not to raise it. There may be a variety of reasons where it was not raised. But the burden is on the defendant having not raised it to show that it illustrated some bias. And they haven't shown that. Nor have they shown any of the other elements of plain error review. They haven't shown that it would affect his substantial rights. There's no indication that if they had, you know, had some knowledge of, you know, that Judge Boyle had some issue a year and a half down the road, that, that the defendant wouldn't have accepted the plea. And I think, you know, there's on the fourth prong of plain error review, there's no indication that this calls into question the impartiality or the. It's got to get the error first. It's got to start out. What's the error? You've got to get an error before you get into those next three. That's right, Your Honor. And it's the defendant's burden to show that error. Not only that there is error, but that it was plain. And there's, there's been no indication of any error here. I would be happy to answer any other questions the courthouse. But if not, there's no bias. No questions for me. None by me either. Thank you, counsel. Then we ask the court to affirm. Thank you. Thank you, Mr. Bragdon. Mr. Wood. Thank you. Thank you very much. All right. Thank you. So this is a pretty straightforward case, I think. It just, and what I would say is that we're talking about this proof of an error. But my response would be that when it comes to a judge refusing himself, it's not that you have to prove the judge for lack of impartiality, it has to be a question, a reasonable question. And the case law bears this out. So the only issue is whether or not there's a question about these prior proceedings in which Judge Boyle presided. And I submit there is, because he recused himself. Something's going on here. We just don't know what it is. I've talked to the attorney who presided, who was at that hearing. He never saw the letter. He doesn't have it anymore. I think, Judge, I don't know where the letter is now. But as far as what right of the defendants is impacted, he has a right to appear in front of an impartial independent judicial official. That's a basic pillar of our court system. And I also point out that in the case law that talks about the recusal of judges, it looks at this from the perspective of not just the defendant or the party in the case, but also the public at law. I'm sorry, the public at large. And there's also a concern that the public's perception and the eroding of the integrity of the court system. We want the public to have confidence in these cases. And that is one thing that comes up again and again, especially, say, in the federal savings and loan case, where in the opinion where they rule the judge should have recused himself. They talk not just about the party seeking recusal and their rights. They talk about the rights of the public to have faith in the court system. And they say that the public might reasonably question the decisions made by the judge, not just the party seeking recusal, but the public at large. And so I would ask the court to consider that as well. If there are no further questions, thank you for your time. We would ask you to reverse the sentence and conviction, vacate the judgment, remand back to the trial division with instructions to conduct a new arraignment before a judge other than Judge Boyle. And thank you very much for your time. Thank you, Mr. Wood. And I know that you're court appointed, I think, by our court to handle this appeal. And we appreciate your work and thank you for it. Well, thank you, sir. I appreciate that. And the argument to have it being concluded, we'll take the matter under advisement from Madam Clerk and we'll adjourn court until tomorrow morning. Thank you, sir. Thank you. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, Allison J. Rushing, David J. Novak